# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

BRIAN A. COLVILLE and
MICHAEL TUCKER HOLMES,

      Nominal Plaintiffs,

and

J.K. 2 HOLMES
CONSTRUCTORS, LLC,

      Plaintiff,

v.                                     Case No: 6:25-cv-799-PGB-NWH

PAUL R. HOLMES, DANIEL P.
SHAFFER and JK2 SCENIC,
LLC,

      Defendants.
_____/

DANIEL P. SHAFFER,

    Counterclaim Plaintiff,

v.

BRIAN A. COLVILLE and
MICHAEL TUCKER HOLMES,

    Counterclaim Nominal
    Defendants,

and

J.K. 2 HOLMES
CONSTRUCTORS, LLC,

    Counterclaim Defendant.

_____/

**PAUL R. HOLMES,**

    **Counterclaim Plaintiff,**

**v.**

**BRIAN A. COLVILLE and MICHAEL TUCKER HOLMES,**

    **Counterclaim Nominal Defendants,**

**and**

**J.K. 2 HOLMES CONSTRUCTORS, LLC,**

    **Counterclaim Defendant.**
_____/

## ORDER

This cause is before the Court on the following filings:

1. Nominal Plaintiffs / Counterclaim Nominal Defendants Brian A. Colville ("**Colville**") and Michael Tucker Holmes ("**Tucker Holmes**") and Plaintiff / Counterclaim Defendant J.K. 2 Holmes Constructors, LLC's ("**JK2 Construction**")[1] Renewed Motion for Preliminary Injunction (Doc. 69 (the "**Renewed Motion**"));

2. Defendant / Counterclaim Plaintiff Paul Holmes ("**Paul Holmes**") and Defendant JK2 Scenic, LLC's ("**JK2 Scenic**") Response in

---

[1] For simplicity, when the term "Plaintiffs" is used herein, it refers collectively to JK2 Construction, Colville, and Tucker Holmes.

2

Opposition to the Renewed Motion (Doc. 73 ("**Paul Holmes and JK2 Scenic's Response**")) and affidavits filed in support thereof (Docs. 74, 75, 76); and

3. Defendant / Counterclaim Plaintiff Daniel P. Shaffer's ("**Shaffer**") Response in Opposition to the Renewed Motion (Doc. 77 ("**Shaffer's Response**")).[2]

Upon consideration, the Renewed Motion is due to be denied.

## I. BACKGROUND

This is a derivative action brought by Colville and Tucker Holmes on behalf of JK2 Construction, a limited liability company ("**LLC**"), arising from internal disputes regarding management authority over JK2 Construction and ownership of its intellectual property. (*See* Docs 53, 69).

Through the Verified Derivative Action First Amended Complaint (Doc. 53 (the "**Amended Complaint**")), Plaintiffs aver that JK2 Construction has "been providing construction services in Central Florida" and elsewhere "since the 1980s." (*Id.* ¶ 24). JK2 Construction is, at present, a manager-managed LLC. (*Id.* ¶ 18). Paul Holmes, the founder of JK2 Construction, owned a majority of its membership interests until January of 2022. (*Id.* ¶¶ 2, 25). Plaintiffs allege that, in approximately 2020 and 2021, Paul Holmes conceived a plan to sell the bulk of his

---

[2] Collectively, Paul Holmes and JK2 Scenic's Response and Shaffer's Response will be referred to as the "Responses." Further, for the sake of simplicity, when the term "Defendants" is used, it refers collectively to Paul Holmes, Shaffer, and JK2 Scenic.

interests in JK2 Construction and to "wind down his work and involvement in the company over the next few years" as he prepared for retirement. (*Id.* ¶ 25).

Ultimately, Paul Holmes agreed to sell 16% of his membership interests to each of three then-employees of JK2 Construction—Colville, Tucker Holmes, and Shaffer (collectively, the "**New Members**"), thereby selling 48% of his total membership interests to the New Members. (*Id.* ¶ 26). In exchange, the New Members agreed to pay $688,000 each to Paul Holmes, paying $120,000 at closing and executing Promissory Notes in favor of Paul Holmes for the remaining $568,000, plus interest. (*Id.* ¶ 27). To this end, Paul Holmes and the New Members each signed purchase agreements with an effective date of January 1, 2022 (collectively, the "**Purchase Agreements**"). (*E.g.*, *id.* ¶ 28). On January 1, 2022, JK2 Construction also executed an amended operating agreement (the "**Operating Agreement**") reflecting the updated ownership interests. (*Id.* ¶ 30).

Although not clearly reflected in the Purchase Agreements or Operating Agreement, Plaintiffs aver it was the intent of the parties that, once the New Members met a payment threshold of 75% of the purchase price (the "**Payment Threshold**"), the parties would execute a new operating agreement wherein Paul Holmes would transfer control of JK2 Construction to its members. (*E.g.*, *id.* ¶¶ 31–33). Counsel for the parties began circulating drafts of an amended operating agreement in 2023 and eventually arrived at a final draft (the "**Proposed New Operating Agreement**"), which reflected "the change in management of JK2

4

Construction from a manager-managed [LLC] to a member-managed [LLC]." (*Id.* ¶¶ 35–36).

Plaintiffs aver that, as of December 2024, the New Members reached the Payment Threshold. (*Id.* ¶ 39). Accordingly, the parties scheduled December 9, 2024, as the date upon which they would execute the Proposed New Operating Agreement. (*Id.* ¶ 37). Plaintiffs further allege that, as this date approached, Paul Holmes refused to sign, demanding, for the first time, that the New Members first agree that he individually owned JK2 Construction's unregistered trademarks (the "**JK2 Marks**"). (*Id.* ¶¶ 38, 42–55). However, Plaintiffs elsewhere expressly concede that "Paul Holmes first inappropriately raised the trademark issue" a year earlier, "at the end of 2023 . . . ." (Doc. 69, p. 27). As a result, Plaintiffs assert that Paul Holmes seeks to convert the company's intellectual property so that he can "use [this property] personally and for his family's benefit." (Doc. 53, ¶ 4).

Plaintiffs further aver that, although Plaintiffs would not agree that Paul Holmes owns the JK2 Marks, Paul Holmes nevertheless fraudulently filed a trademark application as to one of the JK2 Marks (the "**512 Application**") on January 1, 2025. (*Id.* ¶ 48). Plaintiffs allege that Paul Holmes "is also attempting to convert the domain name www.jk2.com, claiming personal ownership" thereof, which "is further evidence that Paul Holmes intends to use the 'JK2' brand in the future for his own personal benefit." (*Id.* ¶ 53).

Additionally, Plaintiffs allege that "Paul Holmes is no longer actively managing JK2 Construction," and is therefore not "negotiating sales[,] dealing

5

with customers, [or] signing and executing invoices, purchase orders, vendor agreements or other important documents, all of which are necessary to operate and manage JK2 Construction." (*Id.* ¶ 39). Plaintiffs thus assert that, because "the other members do not yet have legal authority" to perform these tasks," JK2 construction is being harmed. (*Id.* ¶ 41). Finally, Plaintiffs allege that, in December 2024, Paul Holmes initially "block[ed] the New Members' bonuses and distributions while paying everyone else at JK2 construction," using this as leverage to try and convince them to recognize his ownership of the JK2 Marks. (*Id.* ¶ 55). However, Plaintiffs concede that Paul Holmes later released those payments to the New Members. (*Id.*).

Accordingly, on May 6, 2025, Plaintiffs filed the initial Complaint in this case, naming Paul Holmes as the sole Defendant. (Doc. 1). Shortly thereafter, on May 16, 2025, Plaintiffs filed their first Motion for Preliminary Injunction. (Doc. 15 (the "**Initial Motion**")). However, Plaintiffs allege in the now operative Amended Complaint that four days after Plaintiffs filed the Initial Motion, Paul Holmes improperly "purported to delegate managerial control of JK2 Construction to Dan Shaffer." (Doc. 53, ¶ 62). Plaintiffs state in the Renewed Motion that Paul Holmes "named Shaffer CFO and increased his salary without consulting the other members" and that "Shaffer is now also blocking the transfer of management . . . ." (Doc. 69, p. 3). Plaintiffs dispute that Paul Holmes could properly delegate such authority to Shaffer without amending the Operating Agreement. (Doc. 53, ¶ 63). Plaintiffs further allege that Shaffer has only agreed to support the positions

6

advanced by Paul Holmes in the instant case in exchange for assuming full control of JK2 Construction. (*E.g.*, *id.* ¶ 62).

Thus, on September 18, 2025, Plaintiffs filed the operative Amended Complaint, wherein they add Shaffer and another entity, JK2 Scenic, as Defendants. (Doc. 53). Therein, Plaintiffs bring two counts against Defendants, including for: (1) a declaratory judgment regarding the ownership of the JK2 Marks (Count I), and (2) purported breaches of fiduciary duty by Paul Holmes and Shaffer (Count II). (*Id.* ¶¶ 67–94).[3]

Then, roughly a month later, Plaintiffs filed the instant Renewed Motion seeking preliminary injunctive relief. (Doc. 69). In the Renewed Motion, Plaintiffs ask the Court to enter an Order (1) "declaring JK2 Construction is the rightful owner of the JK2 Marks and requiring Paul Holmes to withdraw the '512 Application and prohibiting any future trademark filings," and (2) "requiring Paul Holmes to transfer management/control of JK2 Construction to all members and revoke any purported managerial control delegated to Shaffer, and prohibiting them from withholding distributions and bonuses for personal gain in the future." (*Id.* at pp. 23, 25–26).

## II.   LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to each of the four prerequisites" showing entitlement to this remedy. *Siegel v.*

---

[3]   Paul Holmes and Shaffer have both filed counterclaims against Plaintiffs. (Docs. 70, 72).

7

*LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (per curiam) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). The four prerequisites that Plaintiff must establish are:

> (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest.

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246–47 (11th Cir. 2002); *see also Miccosukee Tribe of Indians of Fla. v. United States*, 571 F. Supp. 2d 1280, 1283 (S.D. Fla. 2008). Ultimately, issuing a preliminary injunction should be "the exception rather than the rule." *Siegel*, 234 F.3d at 1176 (internal quotation omitted).

### III. DISCUSSION

The Court's analysis begins and ends with its consideration of the element of irreparable harm. A showing of irreparable harm is the "*sine qua non* of injunctive relief." *Siegel*, 234 F.3d at 1176 (quoting *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). Further, the Eleventh Circuit Court of Appeals has "emphasized on many occasions" that "the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Id.* (quoting *City of Jacksonville*, 896 F.2d at 1285); *see also Church v. City of Hunstville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (explaining that the threat alleged must be "real and immediate" rather than "merely conjectural or hypothetical" (internal citation omitted)).

8

The Eleventh Circuit has emphasized that "[a] delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). This is because "the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Id.* (citations omitted).

Consequently, the Eleventh Circuit has noted that "our sister circuits and district courts within this Circuit and elsewhere have found that a party's failure to act with speed or urgency in moving for preliminary injunction necessarily undermines a finding of irreparable harm." *Id.* (collecting cases) (holding a five-month delay in seeking injunctive relief undermined a finding of irreparable harm); *see also Trust v. Armadillo Distrib. Ctr.*, No. 8:21-cv-1967-SDM-AAS, 2022 U.S. Dist. LEXIS 175007, at *11–*13 (M.D. Fla. Aug. 10, 2022), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 172820 (M.D. Fla. Sept. 23, 2022) (collecting cases demonstrating that delays of three months, sixth months, eight months, and nine months undermined claims of irreparable harm); *Pippin v. Playboy Ent. Grp., Inc.*, No. 8:02-cv-2329-T-30EAJ, 2003 U.S. Dist. LEXIS 25415, at *6–*7 (M.D. Fla. July 1, 2003) (finding a delay of "almost a year" undermined a claim of irreparable harm); *Badillo v. Playboy Ent. Grp., Inc.*, No. 8:04-cv-591-T-30TBM, 2004 U.S. Dist. LEXIS 8236, at *8 (M.D. Fla. Apr. 16, 2004) (finding a nine-month delay was "fatal" to a claim of irreparable harm).

Here, Plaintiffs expressly concede that they became aware that Paul Holmes was "inappropriately" claiming ownership of the JK2 Marks at the "end of 2023." (Doc. 69, pp. 26–27). Thus, at best, Plaintiffs delayed for more than sixteen months before filing their Initial Motion for preliminary injunctive relief. (Doc. 15). Indeed, Plaintiffs themselves provide an e-mail string from early January 2024 involving Paul Holmes, his daughter Julie Holmes[4], Colville, Shaffer, and Tucker Holmes, wherein Paul Holmes "propose[s]" he owns the relevant "trademarks and 'JK2 brand' for lack of a better description." (Doc. 37-1, p. 5; *see also* Doc. 69, p. 27 n.4). This "proposal" was part of a broader conversation that was clearly intended to iron out the details regarding ownership of the JK2 Marks considering the integration of the New Members into the company. (*See* Doc. 37-1). Under the circumstances, such an extensive delay strongly "militates against a finding of irreparable harm," as it demonstrates Plaintiffs themselves did not see a need for "speed or urgency" in seeking injunctive relief.[5] *Wreal*, 840 F.3d at 1248.

---

[4] Julie Holmes owns Defendant JK2 Scenic. (Doc. 53, ¶ 52). JK2 Scenic also claims to have an ownership interest in the JK2 Marks. (*Id.*).

[5] While Plaintiffs note that Paul Holmes did not expressly refuse to sign the Proposed New Operating Agreement until early December 2024, Plaintiffs nevertheless delayed more than five months from this date before filing the Initial Motion. (Doc. 69, p. 27; Doc. 15). This delay would similarly undermine a finding of imminent irreparable harm. *See Wreal*, 840 F.3d at 1248 (finding no irreparable harm due to an identical delay). In a related vein, in the Renewed Motion, Plaintiffs cite that Paul Holmes "did not formally take any action" regarding the JK2 Marks until filing the '512 Application on January 1, 2025—an act that occurred four and one-half months before Plaintiffs filed the Initial Motion. (Doc. 69, p. 27; *see* Doc. 15). However, Plaintiffs fail to develop this argument by, for example, describing *when* they learned of this fact. (Doc. 69, p. 27). Plaintiffs also fail to cite any law or facts to explain how Paul Holmes' '512 Application changes the calculus as to irreparable harm. (*See id.*). Accordingly, these arguments do not alter the Court's finding that Plaintiffs failed to establish irreparable harm under the given facts.

In explaining this delay, Plaintiffs assert there was "no immediate need to seek legal action" because they "thought they could work through" the trademark issue and the "members continued to negotiate" regarding the Proposed New Operating Agreement. (Doc. 69, p. 27). Yet, Plaintiffs' ability to delay for continued negotiations only reinforces the notion that the threatened harm is "remote or speculative" rather than "actual and imminent." *Siegel*, 234 F.3d at 1176 (quoting *Ne. Fla. Chapter of the Ass'n of Gen. Contractors*, 896 F.2d at 1285). If Plaintiffs were being irreparably harmed, they "would have and should have" sought injunctive relief. *Badillo v. Playboy Ent. Grp., Inc.*, No. 8:04-cv-591-T-30TBM, 2004 WL 1013372, at *2 (M.D. Fla. Apr. 16, 2004) ("If Plaintiffs were truly being irreparably harmed and the lawyers they hired could not quickly protect their rights [as Plaintiffs have argued], Plaintiffs would have and should have hired new lawyers and filed their action after it became clear that Defendants would not cease and desist from [the offensive conduct]."). The Court is persuaded that this lengthy delay undermines Plaintiffs' claim of irreparable harm.

The Court further notes that the bulk of Plaintiffs' allegations and arguments that Paul Holmes' refusal to transfer control of JK2 Construction is causing irreparable harm stem from Paul Holmes' alleged unwillingness, as sole manager, to handle the company's day-to-day affairs. (*E.g.*, Doc. 53, ¶¶ 3, 19, 41, 86). Plaintiffs' primary source of evidentiary support regarding the alleged harm comes from the Declaration of Tucker Holmes (Doc. 69-10 (the "**Tucker Holmes Declaration**")), wherein Tucker Holmes outlines several specific—and

11

purportedly recent—management issues Plaintiffs attribute to Paul Holmes' inaction. (*Id.* ¶¶ 4–8; Doc. 69, pp. 26–28). Importantly, however, the Tucker Holmes Declaration was signed on May 16, 2025, and appears to be the same declaration that was used in support of the Initial Motion for injunctive relief. (Doc. 15-10). As a result, the Tucker Holmes Declaration, by definition, does not describe the state of affairs at JK2 Construction *after* Shaffer was appointed CFO and after Paul Holmes delegated or attempted to delegate his managerial authority to Shaffer.[6]

By contrast, in support of the Responses, Defendants have filed an affidavit by Shaffer (Doc. 76 (the "**Shaffer Affidavit**")), which was executed on October 28, 2025. Therein, Shaffer attests that, since May 20, 2025, he has "managed and communicated with company employees, sign[ed] company contracts, vendor purchase orders, and vendor invoices and assumed all leadership duties at JK2 Construction" such that he "oversee[s] the day-to-day business of JK2 Construction." (*Id.* ¶ 13). Shaffer further attests that the company is "operating effectively, efficiently, and in the black" and is "on pace to significantly outperform its 2024[7] profits." (*Id.* ¶ 14). Finally, Shaffer states that "despite the current litigation," he and Plaintiff Colville "have weekly meetings to discuss operations of

---

[6] The Court takes no position here as to whether such actions by Paul Holmes were proper.

[7] The Court notes that the Shaffer Affidavit was filed in the latter half of 2025, making 2024 the immediately preceding year.

12

JK2 Construction" and that he believes that he and Colville "could effectively co-manage the company." (*Id.* ¶ 16).

While the Court is mindful of the adversarial posture of this litigation and does not rest its conclusion on the Shaffer Affidavit, it need not do so to find Plaintiffs have failed to "clearly" meet their burden of showing the dispute over control of JK2 Construction is causing irreparable harm. *See Siegel*, 234 F.3d at 1176. Considering the foregoing, particularly when paired with Plaintiffs' delay in moving for preliminary injunctive relief, Plaintiffs have at most established a "possibility" of irreparable harm based upon the dispute over control of JK2 Construction. The Court is not permitted to grant injunctive relief under such circumstances. *See Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x 981, 985 (11th Cir. 2016).[8]

Moreover, while Plaintiffs cite Paul Holmes' withholding of bonuses and distributions as a source of irreparable harm, monetary injuries rarely ever meet the steep threshold of irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); *Siegel*, 234 F.3d at 1191 ("[I]njury suffered by a plaintiff is 'irreparable' only if it cannot be undone through monetary remedies." (internal quotations omitted)). Plaintiffs provide the Court with no

---

[8] "Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018).

authority to suggest that the instant case is among the rare exceptions to that usual rule. (*See* Doc. 69).

Finally, while Plaintiffs assert that "[i]rreparable harm is presumed in trademark actions under the Lanham Act when the Plaintiff establishes a likelihood of success," Plaintiffs do not supply law or argument to support that such a presumption should apply *here*. (Doc. 69, p. 26). There are two reasons why it may not. First, it is not obvious that such a presumption should apply in a case wherein the plaintiffs seek only a declaration as to the ownership of the subject marks. Proof of a likelihood of success on the merits on such a claim does not require proof, for example, of a likelihood of confusion based on the claimed ownership in the marks, which may have supplied grounds for finding irreparable harm if Plaintiffs had brought a trademark *infringement* claim. *E.g.*, *Ferrellgas Partners, L.P. v. Barrow*, No. 04-12548, 143 F. App'x 180, 190 (11th Cir. 2005).

Secondly, the Eleventh Circuit has cast doubt on the continued viability of this presumption in light of the Supreme Court's holding in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 394 (2006), wherein it determined a similar presumption should no longer apply in patent cases. *Hoop Culture*, 648 F. App'x at 984 ("[T]he Supreme Court's decision in *eBay Inc.* . . . call[ed] into question whether courts may presume irreparable harm merely because a plaintiff in an intellectual property case has demonstrated a likelihood of success on the merits." (internal quotation omitted)); *see also Uber Promotions, Inc. v. Uber Techs., Inc.*, 162 F. Supp. 3d 1253, 1262 (N.D. Fla. 2016) (collecting cases) ("This Court is

14

persuaded by *eBay* that a presumption of irreparable harm is no longer appropriate in a trademark infringement case once a substantial likelihood of success on the merits is shown.").

In any event, even assuming *arguendo* that Plaintiffs have established a likelihood of success on the merits and that the presumption does apply here, the Court finds that such a presumption would have been rebutted. *See* 15 U.S.C. § 1116(a) (describing the presumption as "rebuttable"). First, Plaintiffs' lengthy delay in seeking injunctive relief despite learning that Paul Holmes was "improperly" claiming ownership of the JK2 Marks in late 2023 acts to rebut this presumption. *E.g.*, *Wreal*, 840 F.3d at 1248 (finding such a delay undermined a claim of irreparable harm in a trademark infringement action). Additionally, while Plaintiffs baldly assert in the Renewed Motion that "JK2 Construction faces reputational harm and loss of consumer goodwill due to Paul Holmes' claimed ownership of [the JK2 Marks]," Plaintiffs fail to elaborate on this conclusory assertion. (Doc. 69, p. 26). Plaintiffs' allegations on this point and concerning Paul Holmes' use of the www.jk2.com domain in the Amended Complaint are equally conclusory. (*E.g.*, Doc. 53, ¶¶ 4, 49, 53, 54). Under the circumstances, the Court finds that any presumption of irreparable harm that could apply in the instant case would have been rebutted, and Plaintiffs have failed to clearly establish that they will suffer "actual and imminent" irreparable harm in the absence of injunctive relief. *See* Seigel, 234 F.3d at 1176 (quoting *City of Jacksonville*, 896 F.2d at 1285). As a result, the Renewed Motion will be denied.

## IV. CONCLUSION

As a result of the foregoing, Plaintiffs' Renewed Motion for Preliminary Injunction (Doc. 69) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on January 22, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

16